IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CL1 PHILADLPHIA, LLC, *Plaintiff,* v. NATIONAL APOSTOLATE OF MARONITES, *Defendant.* | CIVIL ACTION NO. 22-1659 |

**PAPPERT, J.**                                                                                                     March 21, 2023

**<u>MEMORANDUM</u>**

  CL1 Philadelphia, LLC, doing business as Sheraton Philadelphia Downtown, sued the National Apostolate of Maronites ("NAM") for breach of contract after NAM cancelled a scheduled event at the hotel and refused to pay liquidated damages. NAM moves to dismiss Sheraton's Complaint, arguing, among other things, that certain common law defenses excuse its nonperformance. The Court denies the motion.

I

  NAM, the "official lay apostolate of the Maronite Church of the USA," planned to host its national convention at the Sheraton from July 11 to July 18, 2021. (Compl. ¶¶ 24, 29; ECF 1.) The 2021 Convention was an opportunity for all NAM members to "gather together for spiritual renewal, education and socializing." (*Id.* at ¶ 27.) NAM expected guests from all over the country, booked substantially all the Sheraton's event spaces, and reserved a total of 1,300 guest rooms at a discounted rate. (*Id.* at ¶¶ 27, 32—33, 37.) NAM also agreed to spend a minimum of $95,000.00 on food and beverage.

1

(*Id.* at 38.)  Because of the convention's scale, planning began years in advance; NAM signed the Group Sales Agreement on December 18, 2018.  (Compl. ¶ 29.)

While neither party could have predicted the pandemic that unfolded roughly fifteen months later, the Agreement accounted for future uncertainties.  In the event NAM had to cancel the conference, the parties agreed on a "sliding scale" liquidated damages provision.  *See* (Compl. ¶¶ 39–41; Ex. A § 5.2).  NAM agreed that Sheraton's actual damages would be "difficult to determine" in the event of a cancellation, and the final schedule was the parties' "reasonable effort" to estimate them.  (*Id.*)  The provision accounted for the difficulty of rebooking the space by increasing, in stages, the liquidated damages amount as the event drew closer.

The Agreement also included a *force majeure* provision identifying certain uncontrollable circumstances that could justify termination:

> The performance of this Agreement is subject to any circumstances making it illegal or impossible to provide or use Hotel facilities, including Acts of God, war, government regulations, disaster, strikes, civil disorder or curtailment of transportation facilities.  This Agreement may be terminated for any one of the above reasons by written notice from Hotel.

(Ex. A § 7.4; Compl. ¶¶ 42–45.)

In January 2021, Philadelphia's Covid-19 restrictions prohibited large-scale indoor meetings like the 2021 Convention.  *See* (Compl. ¶¶ 57, 59).  On January 22, NAM notified Sheraton that it wished to "cancel the contract by invoking the force majeure clause…," citing the city's restrictions and the continued uncertainty of the pandemic. (Compl. ¶¶ 47–49; Ex. B.)  On February 10, 2021, Sheraton responded, notifying NAM that its cancellation triggered the Agreement's liquidated damages provision.  (Compl. ¶ 50; Ex. C.)  Given the cancellation date, the Agreement called for

2

$154,750.00 in liquidated damages.  (Compl. ¶ 76; Ex. A § 5.2.)  NAM refused to pay the damages, and Sheraton filed this lawsuit on April 29, 2022.  (Compl. ¶ 51; ECF 1.)

II

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that a defendant is liable for the alleged misconduct.  *Id.*  If the court can infer only the possibility of misconduct from the "well-pleaded" facts—those supported by sufficient factual content to make them facially plausible—the complaint has not shown the pleader is entitled to relief. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016).

Determining plausibility is a "context-specific task" requiring a court to use its judicial "experience and common sense."  *Schuchardt*, 839 F.3d at 347 (quoting *Iqbal*, 556 U.S. at 675).  The court disregards a complaint's legal conclusions, assumes well-pleaded facts are true and then determines whether those facts plausibly entitle the pleader to relief.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Schuchardt*, 839 F.3d at 347.  In doing so, the court construes well-pleaded facts in the light most favorable to the plaintiff and draws reasonable inferences from them.  *Connelly*, 809 F.3d at 790.

III

Under Pennsylvania law, breach of contract claims have three elements: (1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages. *Gladstone Technology Partners, LLC, v. Dahl*, 222 F. Supp. 3d. 432, 440 (E.D. Pa. 2016) (citing *CoreStates Bank, N.A. v. Cutillo*, 732 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

A

NAM first argues that Sheraton fails to state a claim because it is not a party to the Agreement. (Mot. 5, ECF 7.) The first paragraph of Sheraton's Complaint, however, states that it purchased the hotel and "assumed…the contract at issue in this action." (Compl. ¶ 1, n. 1.) While the Agreement precludes NAM from assigning its rights thereunder, Sheraton's assignment rights are unrestricted. *See* (Ex A § 7.8). Sheraton has adequately pleaded the existence of a contract with NAM.

B

NAM next argues that the common law doctrines of impossibility, impracticability and/or illegality of performance discharge the contract and excuse its breach. (Mot. 5–8.) In Pennsylvania, parties have "broad discretion to allocate risks between them in a contract." *1600 Walnut Corporation v. Cole Haan Company Store*, 530 F. Supp. 3d. 555, 558 (E.D. Pa. 2021) (citing *Albert M. Greenfield & Co., Inc. v. Kolea*, 380 A.2d 758, 760 (1977)). Thus, courts should not rely on common law theories of risk allocation, like those NAM cites, when the contract clearly allocates the risk of non-performance between parties, as a *force majeure* provision does. *Id.*

4

NAM also argues, for the first time in its reply brief, it was entitled to terminate the Agreement pursuant to the *force majeure* provision. (Def.'s Reply 1–3.) It now claims to have done so, and that logistical challenges, like planning the event, making travel arrangements and notifying guests, made performance in July "impossible" as early as January. (Def.'s Reply 8.) Sheraton argues that the provision is "unilateral," meaning only Sheraton can invoke it and, in any event, performance was both possible and legal because the city was "fully reopened" by the 2021 Conference dates. (Pl.'s Resp. 14–17.)

NAM's asserted common law arguments are meritless because the *force majeure* clause allocates the risk of nonperformance. While the Court has discretion to disregard NAM's subsequent *force majeure* argument because it was first raised in a reply brief, it will not do so here. *See TriState HVAC Equipment LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d. 517, 529 n. 8 (E.D. Pa. 2010). Even if Philadelphia's Covid-19 restrictions, as "government regulations," constituted a *force majeure* event, see *1600 Walnut Corp.*, 530 F. Supp. 3d. at 559, because those restrictions were ultimately lifted by July 2021, uncertainty in January did not necessarily render performance in July, six months later, "illegal or impossible."

## C

Finally, NAM argues that the liquidated damages provision is unenforceable because it constitutes a penalty. (Mot. 8.) The third element of a breach of contract action merely requires that the alleged breach cause damages. *See Gladstone Technology Partners, LLC,* 222 F. Supp. 3d. at 440. Whether or not Sheraton is entitled to liquidated damages, it has, at a minimum, sufficiently alleged damages from its

inability to book a comparable conference on those dates and its expected food and beverage revenue. (Compl ¶¶ 37, 38.) The Court need not, at this stage, resolve the enforceability of the liquidated damages clause.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
